UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


GLORIA BAILEY                                            PLAINTIFF

VS.                            CIVIL ACTION NO. 3:22CV147TSL-MTP

COMCAST OF LOUISIANA/
MISSISSIPPI/TEXAS, LLC                                   DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff Gloria Bailey to exclude expert testimony pursuant to Federal Rule of Evidence 702 and Mississippi's collateral source rule. Defendant Comcast of Louisiana/Mississippi/Texas, LLC (Comcast) has responded in opposition to the motion, and the court, having considered the memoranda of authorities, together with attachments, concludes the motion should be denied.

Plaintiff has brought this action seeking damages for injuries she sustained in a trip and fall caused by Comcast's negligence.[1]  Plaintiff's primary injuries were a torn rotator cuff and ruptured biceps tendon, the treatment of which resulted in medical bills totaling $201,647.92.  The majority of that amount - $189,772.27 – was incurred for treatment plaintiff received at Merit Health Central for her injuries, including

_____

[1]   Comcast has previously conceded that it is liable for plaintiff's injuries and the court has accordingly entered summary judgment for plaintiff on the issue of liability.

physical therapy, therapeutic joint injections, medications, and arthroscopic surgery on her shoulder.

Under Mississippi law, "[p]roof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable."  Miss. Code Ann. § 41-9-119.  "However, the opposing party may, if desired, rebut the necessity and reasonableness of the bills by proper evidence."  City of Jackson v. Graham, 226 So. 3d 608, 613 (Miss. Ct. App. 2017).  "The ultimate question is then for the fact-finder to determine."  Id.

Comcast proposes to offer expert testimony from Nancy Michalski, a medical bill auditor, regarding the "reasonable value" of plaintiff's medical treatment.  Michalski opines that whereas plaintiff was billed $201,647.92 for medical services, the reasonable value of her past medical treatment actually is only $53,563.75 ($148,084.17 less than she has been charged).  In broad terms, the methodology Michalski used to form her opinions consisted of, first, looking at the procedure billing codes (or determining the appropriate billing code where none was provided) for the medical procedures performed on plaintiff; then using estimations generated by private, third-party companies to obtain what Michalski deems to be "reasonable

values" for these procedure codes in the same geographic region;
and finally, conducting a market analysis of the local medical
community for similar services to confirm the reasonableness of
the charges ascertained in the third-party data sources.
Plaintiff moves to exclude Michalski's opinion testimony,
contending the methodology Michalski used to arrive at her
opinions is unreliable.  Plaintiff argues, more particularly,
that Michalski's methodology is unreliable because Michalski did
not base her opinions on actual data but rather relied on
estimations compiled by third-party companies whose underlying
data were not reviewed by or even accessible to Michalski and
who explicitly state that that they do not represent their
estimations to be accurate, reliable, or complete.  Plaintiff
further argues that Michalski's opinion is irrelevant and
inadmissible as it violates Mississippi's collateral source
rule.

The admissibility of expert testimony is governed by Rule
702 of the Federal Rules of Civil Procedure, which states that a
witness "qualified as an expert by knowledge, skill, experience,
training, or education" may provide expert testimony if his
"scientific, technical, or other specialized knowledge will
assist the trier of fact to understand the evidence or to
determine a fact in issue" and her testimony "is based on
sufficient facts or data; ... is the product of reliable

principles and methods; and ... [she] has reliably applied the principles and methods of the facts to the case". Fed. R. Evid. 702.  The Supreme Court has found this rule to impose on the trial judge a special obligation to ensure that only expert testimony which is both reliable and relevant be admitted. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)).

To be reliable, an expert opinion must be based on sufficient facts and data, and be the product of reliable principles and methods.  Fed. R. Evid. 702(b), (c).  Otherwise, it is unsupported speculation or subjective belief.  The proponent of expert testimony has the burden to establish reliability by a preponderance of the evidence.  Moore v. Ashland Chem. Inc., 151 F. 3d 269, 277 (5th Cir. 1998). "[W]here [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, ... the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline.'"  Kumho Tire, 526 U.S. at 149, 119 S. Ct. 1167 (citing Daubert, 509 U.S. at 592, 113 S. Ct. 2786).  "[A] district court has broad discretion to determine whether a body of evidence relied upon by an expert is

4

sufficient to support that expert's opinion." <u>Knight v. Kirby Inland Marine Inc.,</u> 482 F.3d 347, 354 (5th Cir. 2007).  The relevance inquiry requires the court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." <u>Daubert</u>, 509 U.S. at 591.  "Evidence is relevant if ... it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 401.

Michalski's report identifies and describes the sources on which she relied in formulating her opinions, as follows:  (1) Find-A-Code, an online database of medical billing codes and information that is geographic-specific and based on the date of service; (2) the Physicians' Fee Reference, which she describes as "a nationwide compendium of fees based on public sources and independent research"; (3) PMIC Medical Fees, "a listing of medical procedure codes; descriptions; UCR fees at the 50th, 75th, and 90th percentiles," all "derived from an analysis of over 600 million charges" and which she describes as providing "complete, accurate, and statistically valid information regarding usual, customary and reasonable fees"; and (4) The American Hospital Directory, which "provides data, statistics, and analytics about more than 7,000 hospitals nationwide."  The report recites that these are "scientifically reliable sources used as the standard

in the health care industry [and] relied on by others in the field … including by the American Medical Association," as well as by "physicians, hospitals, insurers, individuals, and state and federal agencies."

Plaintiff's objection that Michalski's methodology is fatally flawed because she did not personally view or verify the data underlying the private, third-party estimations that she relied on in determining what she contends are reasonable fees for the medical services plaintiff received is not well-founded. In formulating opinions, experts routinely rely on reports or studies generated by others.  This is entirely commonplace.  In such cases, the court "must carefully analyze the studies on which experts rely for their opinions before admitting their testimony," <u>Knight v. Kirby Inland Marine Inc.</u>, 482 F.3d 347, 355 (5th Cir. 2007), and exclusion may be warranted if the sources themselves are not reliable or if the sources do not support the expert's conclusion.  <u>See</u> <u>Gen. Elec. v. Joiner</u>, 522 U.S. 136, 146–47, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) (holding that it was not an abuse of discretion to conclude that the studies experts relied on did not individually or in combination support their conclusions).  Such testimony is not subject to exclusion, however, solely because the expert did not personally participate in generating the report or personally review or verify the underlying data.  <u>See</u> <u>Perez v. Boecken</u>, SA-

19-CV-00375-XR, 2020 WL 3074420, at *11 (W.D. Tex. June 10, 2020) (finding medical auditor expert's testimony reliable in face of objection that she "was not involved with developing the program, has no idea how billing data is submitted to the database, and '[could not] personally vouch for the accuracy of the raw data collected and entered' by the program.").

Plaintiff argues further that defendant cannot demonstrate the accuracy or reliability of the data reported by Michalski's sources, as the sources themselves expressly disclaim any warranty or representation as to the accuracy or reliability of their data.  For example, the Find-A-Code terms of use recite that the licensor and its affiliates and subsidiaries "make no warranties or representations … that [a]ny information obtained by you as a result of your use of the services will be accurate or reliable."  Another disclaimer on the Find-A-Code website states that the company "makes no representations or warranties of any kind … as to … the information, content, materials or products, included on this site."  The American Hospital Directory similarly contains a disclaimer of "any warranties as to the accuracy, completeness, timeliness, correctness, non-infringement, merchantability or fitness for a particular purpose of the data, compilations, interpretations, analyses, reports and any other information available through this web site…"  The Physicians' Fee Reference license agreement states

7

that "[t]here is no assurance that coding, fee information or other information in the License Product is complete, accurate, or free of errors or omissions."  And the PMIC Medical Fees uses data compiled from another company, which company's license agreement recites that the content contained therein is provided "as is" without any liability for damages for "accuracy or completeness of data."

Notwithstanding these boilerplate legal disclaimers, federal courts have found that expert opinions relying on values calculated from these sources to be sufficiently reliable under the Federal Rules of Evidence.  See, e.g., Gray v. USAA Cas. Ins. Co., Case No. 8:21-cv-728-SPF, 2023 WL 2289258, at *3 (M.D. Fla. Jan. 20, 2023) (rejecting plaintiff's argument that expert's methodology was unreliable because he used the PMIC Medical Fees Directory as a source to discern usual and customary charges); Thomas v. Chambers, No. 18-4373, 2019 WL 8888169, at *13 (E.D. La. Apr. 2016, 2019) (citing Incardone v. Royal Caribbean Cruises, Ltd., No. 16-20924, 2018 WL 6520934, at *7 (S.D. Fla. Dec. 11, 2018), and Lee v. Fischer, No. 08-16, 2009 WL 10678390, at *3 (S.D. Ga. July 10, 2009), and finding that expert's methodology, which involved reliance on values calculated from Physicians' Fee Reference, to be reliable); Dean v. Cherokee Ins. Co., No. 1:18-cv-04914-WMR, 2021 WL 9315270, at *7 (N.D. Ga. Mar. 22, 2021) (stating that record showed that

Physicians' Fee Reference and PMIC's Medical Fees "are industry publications that are commonly relied upon by medical professionals, insurance companies, and others involved in the medical industry to keep up to date with recent trends in fees charged for medical services" and provided adequate basis for expert's opinion despite disclaimer in Physicians' Fee Reference that published information therein may or may not prove to be accurate and that it "should not be the sole basis for making decisions about a medical practice or the marketplace in general"). In Johnson v. ABF Freight System, Inc., Case No. 2:18-cv-01835, 2021 WL 4860412, at *4 (N.D. Ala. Apr. 23, 2021), the court, in its opinion denying a motion to exclude Michalski's testimony, observed that Physcans' Fee Reference and Medical Fees "have been adopted and commonly used in the medical billing industry for decades" and are routinely used by "physicians, insurers, state and federal agencies, hospitals and clinics, and third-party administrators." Id. at *3. The fact that "the databases contain disclaimer language for legal liability to guard against misuse and misappropriation" did not require exclusion of Michalski's testimony. In this regard, the court observed (as does defendant herein) that the sources relied upon, along with the disclaimers, recommend that the information contained therein be correlated with other sources, and that is precisely what Michalski did there and has done

9

here.  Id.  For the foregoing reasons, therefore, plaintiff's objection to Michalski's methodology is rejected.

The court also rejects plaintiff's further argument that Michalski's opinions are inadmissible and hence irrelevant based upon Mississippi's collateral source rule.  As the court understands her position, plaintiff argues the collateral source is implicated because the UCR information provided in one of the sources relied on by Michalski represents the allowable amount used by certain healthcare plans and third-party payers to generate fair healthcare pricing, and not what the medical provider actually charges for its services.

"Under [the collateral source] rule, a defendant tortfeasor is not entitled to have damages for which he is liable reduced by reason of the fact that the plaintiff has *received compensation* for his injury by and through a totally independent source, separate and apart from the defendant tortfeasor." Coho Resources, Inc. v. McCarthy, 829 So. 2d 1, 19 (Miss. 2002) (quoting Central Bank of Miss. v. Butler, 517 So. 2d 507, 511-12 (Miss. 1987)) (emphasis added).  As an evidentiary principle, the rule bars a party from introducing evidence that a plaintiff *has received payments* from a collateral source in order to mitigate damages.  Geske v. Williamson, 945 So. 2d 429, 434 (Miss. Ct. App. 2006).

Michalski's proposed testimony "is not that [plaintiff's] recovery should be reduced because of payment by an independent source" but is instead that the plaintiff's medical providers' charges – particularly those of Merit Health Central – "[are] unreasonable because [they do] not reflect the prevailing charge in the geographic area, or the payment that providers actually receive." Abadie v. Target Corp. of Minn., No. 84-14112, 2021 WL 5029462, at *4 (E.D. La. 2021) (holding collateral source rule inapplicable to expert's testimony that plaintiff's provider's charges were excessive based on prevailing fees charged in her area). In Perez, 2020 WL 3074420, plaintiff sought to exclude the proposed expert testimony of a physician offered to testify as to the reasonableness of the plaintiff's claimed future medical expenses, contending that his proposed testimony as to the reasonable medical charges for the plaintiff's treatment violated the collateral source rule because "one of the bases of [his] opinion was his familiarity 'with the usual and customary payments by Medicare and commercial health insurance companies ... for surgical procedures of this type.'" Id. at 13. The court rejected the plaintiff's challenge because her objection to the expert's opinion "[went] to the 'bases and sources' of the opinion, not to inadmissible evidence of a collateral source of payment to Plaintiff in this case. Plaintiff is entitled to question the

weight assigned to [the expert's] opinion, but ultimately such a dispute is 'left for the jury's consideration.'" Id. (quoting Viterbo v. Dow Chemical Co., 826 F.2d 420, 422 (5th Cir. 1987)). The same conclusion applies here.

Based on the foregoing, it is ordered that plaintiff's motion to exclude the proposed expert testimony of Nancy Michalski is denied.

SO ORDERED this 2nd day of May, 2023.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE